**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| EDDIE ABERNATHY,<br>    *Plaintiff,*<br><br>        v.<br><br>COMMISSIONER OF CORRECTION,<br>WARDEN AT CHESHIRE<br>CORRECTIONAL INSTITUTION, and<br>JOHN DOE OFFICER(S) AT SOUTH<br>BLOCK,<br>        *Defendants.* | No. 3:20-cv-00628 (VAB) |

**INITIAL REVIEW ORDER**

On May 6, 2020, Eddie Abernathy ("Plaintiff"), a sentenced inmate[1] proceeding *pro se* and currently in the custody of the Department of Correction ("DOC"), filed a Complaint under 42 U.S.C. § 1983, concerning an incident in which Mr. Abernathy slipped and fell on a wet floor.[2] Compl., ECF No. 1 (May 6, 2020). He brought claims seeking equitable relief and damages for violation of his rights under the Fifth, Fourteenth, and Eighth Amendments against the DOC Commissioner, the Cheshire Correctional Institution ("Cheshire") Warden, and John Doe Officers, who were in charge of his housing in the South Block-2 at Cheshire.[3]

In an initial review order, the Court dismissed Mr. Abernathy's Complaint without prejudice for failure to state any plausible claims. Initial Review Order, ECF No. 13 (Aug. 28,

---

[1] The Court takes judicial notice of the public record on the Department of Correction ("DOC") website showing Mr. Abernathy was sentenced to fifty years of incarceration on June 6, 2000. *See Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (court may "take judicial notice of relevant matters of public record"). http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=239453.

[2] On June 8, 2020, Magistrate Judge William I. Garfinkel granted Mr. Abernathy's motion to proceed *in forma pauperis*. *See* Order, ECF No. 11 (June 8, 2020).

[3] The Court has construed Mr. Abernathy's claims as being brought against the defendants in their individual and official capacities.

2020). The Court afforded Mr. Abernathy the opportunity to file an amended complaint if he believed that he could correct the deficiencies with his Eighth Amendment claim as identified in the initial review order. *Id.* at 13.

On October 16, 2020, Mr. Abernathy filed an Amended Complaint seeking damages, a declaratory judgment, and injunctive relief against the Commissioner of Correction, the Cheshire Correctional Institution Warden, and John Doe Officers.[4]  Am. Compl., ECF No. 17 (Oct. 16, 2020).

After initial review of the Amended Complaint, Mr. Abernathy has stated plausible Eighth Amendment claims against the John Doe Officers.

## I.   FACTUAL BACKGROUND[5]

On August 21, 2019, the entire South Block-2 floor allegedly became saturated with water, the result of a broken ventilation system inoperable for several days. Am. Compl., ECF No. 17 ¶¶ 7, 18. Mr. Abernathy allegedly yelled out to the correctional officers and supervisory officials (Lieutenants, Captains, and Shift Commanders) to complain about the floor, but the correctional officers and supervisory officials all allegedly responded that he should not "worry about it." *Id.* ¶¶ 8-9, 19.  The correctional officers and supervisory officials allegedly made no effort to discontinue movement to remedy the risk posed by the saturated floor. *Id.* ¶¶ 9, 20.

On the third shift, he allegedly informed the correctional officers and supervisory officials about the risk posed by the saturated floor, but they allegedly told him to take his

---

[4] These parties are listed as defendants in the body of the Complaint, but his case caption only names the Commissioner of Correction. *See* Compl. Although Rule 10(a) of the Federal Rules of Civil Procedure requires that all defendants be listed in the case caption, "[c]ourts have found *pro se* complaints to sufficiently plead claims against defendants not named in the caption when there are adequate factual allegations to establish that the plaintiff intended them as defendants." *Imperato v. Otsego Cty. Sheriff's Dep't*, No. 3:13-cv-1594 (BKS/DEP), 2016 WL 1466545, at *26 (N.D.N.Y. Apr. 14, 2016) (collecting cases).  The Court notes that these are the same parties that Mr. Abernathy sued in his prior complaint.

[5] All factual allegations are drawn from the Amended Complaint. *See* Am. Compl.

complaint to the warden. *Id.* ¶¶ 10, 21-22, 27.  The known risk posed by the saturated floor was allegedly was present from August 21, 2020 to August 22, 2020.[6]  *Id.* ¶¶ 15, 26, 28, 36.  Because the rubber floor was allegedly stripped, it allegedly became even more slippery when wax was applied. *Id.* ¶ 29.

While reporting for work call, Mr. Abernathy allegedly "hydroplaned" and fell on the floor and injured his fourth and fifth lumbar, allegedly the result of the failure to remedy the risk of the saturated floor. *Id.* ¶¶ 17, 31, 64-65.

## II.   STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'" (quoting 28 U.S.C. § 1915A)).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

---

[6] Mr. Abernathy has also provided an allegation indicating that the risk from the saturated floor was also present on August 19, 2020. *Id.* at ¶ 36.

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford pro se litigants).

## III.    DISCUSSION

Mr. Abernathy's Amended Complaint suggests Eighth Amendment claims for the conditions of his confinement and Fourteenth Amendment claims about his due process rights. *See* Am. Compl. ¶¶ 51-53,[7] pp. 6, 18, 20, 23, 25, 27 (due process); ¶¶ 72, 77, 88, pp. 11, 17, 19,

---

[7] Mr. Abernathy also questions whether the Court's denial of his motion for summary judgment before discovery was a violation of the Fourteenth Amendment. *Id.* at ¶ 53. The Court clarifies that the motion for summary judgment

26 (cruel and unusual). Mr. Abernathy's alleged deliberate indifference claims are governed by the Eighth Amendment, rather than the Fourteenth Amendment, because he is a sentenced prisoner rather than a pretrial detainee. *See Bell v. Wolfish,* 441 U.S. 520, 535 n.16 (1979); *Darnell v. Pineiro,* 849 F.3d 17, 29 (2d Cir. 2017); *Abernathy v. Comm'r of Correction*, No. 3:20-CV-628 (VAB), 2020 WL 5097566, at *2 (D. Conn. Aug. 28, 2020) (dismissing Fourteenth Amendment claim).[8]

Accordingly, any related the Fourteenth Amendment claims will be dismissed, and analyzed instead under the Eighth Amendment.

### A.    Official Capacity Claims

The Court first will consider whether Mr. Abernathy may assert his Eighth Amendment official capacity claims against the defendants. Mr. Abernathy's Amended Complaint requests damages, injunctive relief and a declaratory judgment. ECF No. 17 at pp. 27-28.

In the earlier initial review order, Mr. Abernathy's official capacity claims for money damages, declaratory judgment, and injunctive relief were dismissed. *Abernathy*, No. 3:20-CV-628 (VAB), 2020 WL 5097566, at *3. Upon review of the Amended Complaint, the Court again will dismiss Mr. Abernathy's official capacity claims.

---

was denied without prejudice, and Mr. Abernathy may refile his motion for summary judgment at a time after this Court's determination of whether Mr. Abernathy has stated any plausible claims under 42 U.S.C. § 1983.

[8] The Eighth Amendment provides the specific constitutional provision for his claim of deliberate indifference to the alleged substantial risk of serious harm posed by the saturated floor. *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) ("[I]f a constitutional claim is covered by a specific constitutional provision ... the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."); *see also Hu v. City of N.Y.*, 927 F.3d 81, 104 (2d Cir. 2019) (plaintiff's due process allegations "are subsumed by [his] more particular allegations" of equal protection violations).

As a preliminary matter, any claims for money damages against the defendants, who are state employees, in their official capacities are barred by the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

In *Ex parte Young*, 209 U.S. 123 (1908), the United States Supreme Court recognized a limited exception to the Eleventh Amendment's grant of sovereign immunity from suit to permit a plaintiff to sue a state official acting in an official capacity for prospective injunctive relief for continuing violations of federal law. *Id.* at 155–56; *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 371 (2d Cir. 2005). "A plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for 'prospective injunctive relief' from violations of federal law." *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007).

With respect to Mr. Abernathy's claims for injunctive relief, "[i]n the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 846-47 (1994)) (other citations omitted). Federal courts can order prospective relief "in any civil action with respect to prison conditions," provided it "extend[s] no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. § 3626(a). Injunctive relief afforded by a court must be narrowly tailored or proportional to the scope of the violation and extend no further than necessary to remedy the violation. *Brown v. Plata*, 563 U.S. 493, 531 (2011). Thus, the court should reject "remedial orders that unnecessarily reach out to improve prison conditions other than those that violate the Constitution." *Id.* Mr. Abernathy seeks an order providing access to medical procedures not presently administered at Cheshire (which is the same as his injunctive request in his prior complaint), a remedy beyond the scope of his alleged

Eighth Amendment conditions of confinement claim based on deliberate indifference to the saturated floor at Cheshire in August 2019.

Accordingly, this request for injunctive relief will be dismissed.

Declaratory relief operates in a prospective manner to allow parties to resolve claims before either side suffers significant harm. *See In re Combustion Equip. Assoc. Inc*., 838 F.2d 35, 37 (2d Cir. 1988). A declaratory judgment, however, concerns prospective relief that is only available if a plaintiff can show "a sufficient likelihood" of being wronged again "in a similar way." *Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012). Mr. Abernathy's Amended Complaint requests a declaration of the right to be free from deliberate indifference, but Mr. Abernathy is not experiencing an on-going constitutional violation. "Notice relief" is not the type of remedy designed to prevent ongoing violations of federal law and therefore also is barred by the Eleventh Amendment. *Green v. Mansour*, 474 U.S. 64, 71 (1985) ("Because 'notice relief' is not the type of remedy designed to prevent ongoing violations of federal law, the Eleventh Amendment limitation on the Art. III power of federal courts prevents them from ordering it as an independent form of relief.").

Accordingly, the official capacity claims will be dismissed.

**B.     The Eighth Amendment Conditions of Confinement Claim**

In *Farmer v. Brennan*, the United States Supreme Court explained that the Eighth Amendment's prohibition of cruel and unusual punishment "places restraints" and imposes duties on prison officials to provide humane conditions of confinement. 511 U.S. at 832 (internal quotation marks and citations omitted). Thus, the Eighth Amendment protects against punishments that "involve the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). Although the Constitution does not require "comfortable" prison

conditions, the Eighth Amendment requires prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care," and to "take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832–33.

To state a deliberate indifference to health or safety claim under the Eighth Amendment, an inmate must demonstrate both an objective and a subjective element. To meet the objective element, an inmate must allege that he was incarcerated under conditions that resulted in a "sufficiently serious" deprivation, such as the denial of a "life[ ] necessit[y]" or a "substantial risk of serious harm." *Id.* at 834 (internal quotation marks and citations omitted).

To meet the subjective element, an inmate must allege that the defendant prison officials possessed culpable intent, that is, the officials knew that he faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. *See id.* at 834, 837. Thus, an allegation of "mere negligen[t]" conduct is insufficient. *Id.* at 835. Rather, the subjective element requires that a plaintiff allege that prison officials acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin v. Goord,* 467 F.3d 263, 280 (2d Cir. 2006).

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). The Second Circuit has defined "personal involvement" to mean direct participation, such as "personal participation by one who has knowledge of the facts that rendered the conduct illegal," or indirect participation, such as "ordering or helping others to do the unlawful acts." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (citation omitted).

Mr. Abernathy has alleged his Eighth Amendment claims for damages against the Commissioner of Correction, the Cheshire Warden, and John Doe Officers.

1.   <u>DOC Commissioner and Cheshire Warden</u>

With respect to his claims against the DOC Commissioner and the Cheshire Warden, Mr. Abernathy cannot sue these defendants for damages solely because of their supervisory position. *See Wright*, 21 F.3d at 501 ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (internal quotation marks omitted).

In 1995, the Second Circuit determined that personal involvement of a supervisory official may be shown by evidence that

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir. 1995).

After 2009, however, the impact of *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), on the *Colon* factors was unclear. *See Grullon v. City of New Haven,* 720 F.3d 133, 139 (2d Cir. 2013) (noting that *Iqbal* "may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations" but declining to specifically address the issue); *Reynolds v. Barrett,* 685 F.3d 193, 205 n.14 (2d Cir. 2012) ("*Iqbal* has ... engendered conflict within our Circuit about the continuing vitality of the supervisory liability test set forth in *Colon*."); *Johnson v. White,* No. 9:14–cv–00715

(MAD)(DJS), 2015 WL 6449126, at \*4 n. 2 (N.D.N.Y. Oct. 23, 2015) (noting that the Second

Circuit had yet to decide the impact of *Iqbal* on *Colon*); *see also Koehl v. Bernstein,* No. 10 Civ.

3808(SHS)(GWG), 2011 WL 2436817, at \*9 (S.D.N.Y. June 17, 2011) (noting that in *Iqbal,* the

Supreme Court "explicitly rejected the argument that[] 'a supervisor's mere knowledge of his

subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution'"

(quoting *Iqbal,* 556 U.S. at 677)).

  In December 2020, the Second Circuit clarified the standard for personal involvement of

supervisory officials in a Section 1983 action. *See Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir.

2020). In *Tangreti*, a counselor supervisor in a prison "argue[d] on appeal that she [wa]s immune

from suit under the doctrine of qualified immunity because her actions did not violate a statutory

or constitutional right that was clearly established at the time of the challenged conduct," 

specifically "that her liability as a supervisor of the [prison] [wa]s not clearly established." *Id.* at

614-15 (alterations and internal quotation marks omitted).

  Because under *Iqbal,* "a plaintiff must plead that each Government-official defendant,

through the official's own individual actions, has violated the Constitution," 556 U.S. at 676, the

Second Circuit held that "for deliberate-indifference claims under the Eighth Amendment against

a prison supervisor, the plaintiff must plead and prove that the supervisor had subjective

knowledge of a substantial risk of serious harm to an inmate and disregarded it." *Tangreti*, 983

F.3d at 616 (citing *Farmer*, 511 U.S. at 837). Thus, "there is no special rule for supervisory

liability." *Id.* at 618. "The factors necessary to establish a [§ 1983] violation will vary with the

constitutional provision at issue" because the elements of different constitutional violations vary"

and "[t]he violation must be established against the supervisory official directly." *Id.* (first

alteration in original).

A plaintiff also must establish that the supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation. *Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014); *see also Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002) (plaintiff must show "an affirmative causal link" between the supervisor's involvement and the constitutional injury). A general allegation that a defendant failed to supervise subordinates is insufficient to establish personal involvement without a factual connection between that supervisory defendant's alleged failure and the alleged resulting harm to the plaintiff. *See Samuels v. Fischer,* 168 F. Supp. 3d 625, 639 (S.D.N.Y. 2016) (citing cases).

Mr. Abernathy has not alleged how either the DOC Commissioner or the Warden were personally involved in the conditions concerning the saturated floor that led to his injury. His amended allegations assert that the Commissioner is in charge of overall DOC operations and that the Warden is in charge of the operations at Cheshire and creates the policy for the broken ventilation and procedures implemented for excessive heat in the prison environment. Am. Compl. ¶¶ 4-5, 30. But he still has not alleged facts showing that either the Warden or the Commissioner had subjective knowledge of a substantial risk of serious harm to him and disregarded it as required by *Tangreti. See* 983 F.3d at 616.

To the extent Mr. Abernathy alleges that the Warden created a policy regarding broken ventilation and procedures for excessive heat, he has not provided facts suggesting "a factual connection between" the Cheshire Warden's alleged policy and the asserted harm, or that either the Warden or the Commissioner had subjective knowledge that this posed a substantial risk of serious harm to him. *See Wilson v. Santiago*, 2020 WL 5947322, at *5 (D. Conn. 2020) (citation omitted); *Tangreti*, 983 F.3d at 616. Mr. Abernathy fails to allege that either the Commissioner's or the Warden's conduct were the proximate cause of the alleged Eighth Amendment violation

11

based on Mr. Abernathy's exposure to a slippery wet floor. Mr. Abernathy cannot hold the

Commissioner and Warden personally liable for a constitutional violation by their staff based on

their high position of authority in the prison system. *See Tangreti*, 983 F.3d at 616 ("[F]or

deliberate-indifference claims under the Eighth Amendment against a prison supervisor, the

plaintiff must plead and prove that the supervisor had subjective knowledge of a substantial risk

of serious harm to an inmate and disregarded it.").

Because Mr. Abernathy's allegations do not establish the supervisory liability of these

defendants, his Eighth Amendment claims against the DOC Commissioner and the Cheshire

Warden will be dismissed as not plausible under 28 U.S.C. § 1915A(b)(1).

   2.   John Doe Officers

Mr. Abernathy has alleged his Eighth Amendment claims for damages against unnamed

John Doe Offficers, who were allegedly correctional staff in charge of Mr. Abernathy's housing

unit. ECF No. ¶ 6. Construing Mr. Abernathy's Amended Complaint most broadly, the Court

considers Mr. Abernathy to allege that the unidentified John Doe Officers were the correctional

officers whom he informed of the risk of harm posed by the saturated floor prior to his injury.

Generally, "slip-and-fall claims are seldom viewed as rising to "constitutional

dimension[.]" *McCray v. Lee*, 963 F.3d 110, 115, 120 (2d Cir. 2020) ("As the district court

noted, McCray's Complaint did not make any claims of exceptional circumstances that would

elevate the Green Haven yard conditions beyond the typical level of danger presented by a

slippery sidewalk or a wet floor."). Mr. Abernathy's amended allegations, however, indicate that

he informed the correctional staff of the saturated floor and its risk of harm on several occasions

from August 21 to August 22, 2019, and that they failed to take any remedial action during these

two days. *See* Am. Compl. ¶¶ 8-10, 19, 21-22, 27. Mr. Abernathy further has alleged that the

floor became extremely slippery when waxed due to its "stripped" condition. *Id.* ¶ 29.

Construed most favorably to Mr. Abernathy, these allegations raise an inference that the

John Doe Officers consciously ignored a risk of harm posed by a potentially extremely slippery

floor for two days. For purposes of this initial review, these allegations suggest an exceptional

circumstance involving a violation of contemporary standards of decency. *See Helling v.*

*McKinney*, 509 U.S. 25, 36 (1993) ("[T]he prisoner must show that the risk of which he

complains is not one that today's society chooses to tolerate."); *see also Salahuddin,* 467 F.3d at

280 (subjective test satisfied where defendant failed to act "while actually aware of a substantial

risk that serious inmate harm will result"). Thus, Mr. Abernathy's amended allegations satisfy

both the objective and subjective components of the Eighth Amendment analysis.

Accordingly, for now, Mr. Abernathy has stated a plausible Eighth Amendment claims

against the John Doe Correction Officers. As this Court's earlier initial review noted, however,

the Court cannot serve Doe defendants with the complaint in their individual capacities as they

are unidentified defendants. *See Abernathy*, No. 3:20-CV-628 (VAB), 2020 WL 5097566, at *6

n. 5. Mr. Abernathy must provide the Court with the identity of at least one John Doe Officer.

## ORDERS

For the foregoing reasons, the Court enters the following orders:

(1) Mr. Abernathy's Eighth Amendment claims shall proceed against Defendants John

Doe Officers in their individual capacities. Any Fourteenth Amendment or official capacity

claims are **DISMISSED**.

(2) All claims against the DOC Commissioner and Cheshire Warden are **DISMISSED**

for failure to state a claim.

(3) Because the Clerk of Court cannot effect service on the Doe Defendants without those defendants' full names and current addresses, Mr. Abernathy must obtain this information and file an Amended Complaint that identifies the Doe Defendants by **May 21, 2021**. Mr. Abernathy's failure to identify, within this time period, at least one of the Doe Defendants will result in the dismissal of all claims in this action.

(4) The Clerk of Court shall mail a courtesy copy of the Amended Complaint [ECF No. 17] and this Order to the DOC Office of Legal Affairs.

(5) If Mr. Abernathy changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he **MUST** notify the Court. Failure to do so can result in the dismissal of the case. Mr. Abernathy must give notice of a new address even if he is incarcerated. He should write **"PLEASE NOTE MY NEW ADDRESS"** on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Mr. Abernathy has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify the defendants or defense counsel of his new address.

(6) Mr. Abernathy shall utilize the Prisoner Efiling Program when filing documents with the Court. Mr. Abernathy is advised that the Program may be used only to file documents with the Court. Local court rules provide that discovery requests are not filed with the Court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendant's counsel by regular mail.

**SO ORDERED** at Bridgeport, Connecticut, this 2nd day of April, 2021.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE