## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

EDDIE ABERNATHY,
    *Plaintiff,*

    v.

COMMISSIONER OF CORRECTION,
WARDEN AT CHESHIRE
CORRECTIONAL INSTITUTION
("C.C.I."), and JOHN DOE OFFICER(S) AT
SOUTH BLOCK,
    *Defendants.*

No. 3:20-cv-628 (VAB)

## RULING ON MOTION FOR SUMMARY JUDGMENT

On May 6, 2020, Eddie Abernathy ("Plaintiff"), a sentenced inmate[1] proceeding *pro se*

and currently in the custody of the Department of Correction ("DOC"), filed this lawsuit under

42 U.S.C. § 1983. Compl., ECF No. 1 (May 6, 2020) ("Compl.").[2]

Defendants have filed now a motion for summary judgment. Defs.' Mot. for Summ. J.,

ECF No. 30 (Feb. 28, 2022) ("Mot. for Summ. J.").

For the following reasons, the motion for summary judgment is **DENIED.**

## I.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      FACTUAL BACKGROUND

---

[1] The Court takes judicial notice of the public record on the Department of Correction ("DOC") website
showing Mr. Abernathy was sentenced to fifty years of incarceration on June 6, 2000, and is currently
housed at Cheshire Correctional Institution ("Cheshire"). *See Giraldo v. Kessler*, 694 F.3d 161, 164 (2d
Cir. 2012) (noting a court may "take judicial notice of relevant matters of public record"); *Inmate
Information: Abernathy, Eddy*, DEPT' OF CORR.,
http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=239453 (last accessed Aug. 1, 2022).

[2] On June 8, 2020, Magistrate Judge William I. Garfinkel granted Mr. Abernathy's motion to proceed *in
forma pauperis. See* Order, ECF No. 11 (June 8, 2020).

The second Amended Complaint[3] and the materials submitted by the parties, including the statements of fact and exhibits, reflect the following background.[4]

### 1.      Plaintiff's Allegations

On August 21, 2019, Mr. Abernathy complained about the whole floor in the South Block 2 being "saturated with water," due to a broken ventilation system that had been inoperable for several days. Am. Compl. ¶¶ 7, 18, ECF No. 20 (May 4, 2021) ("Second Am. Compl."). Correction Officers Marinelli and Vamos allegedly conduct tours of Mr. Abernathy's place of confinement at thirty-minute intervals. *Id.* ¶ 59.

When Mr. Abernathy allegedly yelled out about the saturated floor to Correction Officer Vamos, Officer Vamos allegedly responded that he should not "worry about it." *Id.* ¶¶ 8, 19. Captain James Watson allegedly did not take action to discontinue movement until the risk posed by the saturated floor was remedied. *Id.* ¶ 9. From August 21, 2019 at 9:20 a.m. through August 22, 2019 at 8:45 a.m., Correction Officers Marinelli and Vamos and Captain Watson "failed to implement reasonable measure[s] to guarantee the safety of the inmates or [Mr. Abernathy]." *Id.*

---

[3] The Court may consider the allegations of the verified complaint in reviewing the motion for summary judgment. *See Jordan v. LaFrance*, No. 3:18-cv-1541 (MPS), 2019 WL 5064692, at *1 n.1 (D. Conn. Oct. 9, 2019).

[4] Local Rule 56(a)1 provides: "Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact." Defendants informed Mr. Abernathy of this requirement in their Notice to *Pro Se* Litigant. *See* Notice to Self-Represented Litig., ECF No. 30-3 (Feb. 28, 2022) ("Notice to Litig."). Thus, where Mr. Abernathy has not filed a response to Defendants' Local Rule 56(a)1 Statement in compliance with Local Rule 56(a)2, the facts asserted in Defendants' statement may be deemed admitted where supported by the evidence. *See Small v. Clements*, No. 3:18-cv-1731 (KAD), 2019 WL 5727388, at *1, n.1 (D. Conn. Nov. 5, 2019); *Wu v. Nat'l Geospatial Intel. Agency*, No. 3:14-cv-1603 (DJS), 2017 WL 923906, at *2 (D. Conn. Mar. 8, 2017) (noting in context of *pro se* plaintiff's failure to submit a Local Rule 56(a)2 statement, that "*pro se* parties are not excused from abiding by the Federal Rules of Civil Procedure" (internal quotations and citation omitted)).

¶ 28. The substantial risk to Mr. Abernathy's safety was allegedly recorded in a logbook on August 19, 2022, August 21, 2019 at 9:20 a.m., and August 22, 2019 at 8:45 a.m. *Id.* ¶ 36.

Mr. Abernathy alleges that "[t]he rubber floor was stripped, … which bec[a]me[] even more slippery when wax is applied." *Id.* ¶ 29. The wet floor caused him to "hydroplane[e]" and fall on the floor when he was reporting to work, resulting in injury to his fourth and fifth lumbar vertebrae and a "bone . . . stick[ing] out of [his] right shoulder blade." *Id.* ¶¶ 31–32, 56–58, 63–65.

### 2.    Evidentiary Record[5]

In August 2019, Captain Watson was the Unit Manager for South Block 1, 2, 3, and 4, while Officers Marinelli and Vamos were correctional officers at Cheshire. Defs.' Statement of Mat. Facts ¶ 34, ECF No. 30-2 (Feb. 28, 2022) ("Defs.' Rule 56(a) Statement"). These Defendants claim no recollection of discussing the conditions within South Block 2 with Mr. Abernathy on either August 21 or 22, 2019. *Id.* ¶ 35. Captain Watson states that there was only condensation in certain spots on the floor rather than standing water, that he was not instructed to limit movement in the South Block 2, and that Support Services brought in commercial fans to assist with the evaporation. Watson Decl. ¶¶ 8–10, ECF No. 30–4 (Feb. 28, 2022) ("Watson Decl."). Correction Officer Vamos states that he does not recollect telling Mr. Abernathy "not to worry" about the water on the floor. Vamos Decl. ¶¶ 5–7, ECF No. 31 (Mar. 3, 2022) ("Vamos Decl.").

Mr. Abernathy denies these averments and asserts that Watson ordered the fans after his injury from his fall. *See* Pl.'s Opp'n at 19 ¶¶ 36–39, 23–24 ¶¶ 5–13, 18, ECF No. 39 (May 13,

---

[5] The Court includes the facts relevant to Mr. Abernathy's administrative remedies in this ruling's discussion of whether Mr. Abernathy properly exhausted his administrative remedies prior to filing this action.

2022) (Pl.'s Opp'n). Mr. Abernathy claims to have spoken to Watson, Marinelli, and Vamos about his concerns about the HVAC malfunction and the water on the floor, but they were unwilling to report his safety concerns. *Id.* at 23–24 ¶¶ 6–13. He states that he "called out" to Defendant Marinelli "that the HVAC needed to get fixed because the conditions were unsafe," but Officer Marinelli yelled back, "[y]ou're locked up, don't worry about it." *Id.* at 23 ¶¶ 9–10. He explains that on August 22, 2022, he slipped and fell on floor in common area. *Id.* at 24 ¶ 14. He asserts further that Officer Marinelli witnessed his fall but failed to call an emergency code or provide him with assistance and walked away after Mr. Abernathy indicated he had injured his back. *Id.* at 24 ¶¶ 16–17.

B.     **PROCEDURAL HISTORY**

On May 6, 2020, Mr. Abernathy filed his complaint in this Court. Compl.

On initial review, the Court dismissed Mr. Abernathy's complaint without prejudice for failure to state any plausible claims. Initial Review Order, ECF No. 13 (Aug. 28, 2020) ("First IRO"). The Court afforded Mr. Abernathy the opportunity to file an amended complaint if he believed that he could correct the deficiencies with his Eighth Amendment claim as identified in the initial review order. *Id.* at 12.

On October 16, 2020, Mr. Abernathy filed an Amended Complaint against the Commissioner of Correction, the Cheshire Correctional Institution Warden, and four John Doe Officers. Am. Compl., ECF No. 17 (Oct. 16, 2020) ("First Am. Compl."). On initial review, the Court permitted Mr. Abernathy to proceed on his Eighth Amendment claims for damages against the John Doe Officers. Initial Review Order, ECF No. 19 (Apr. 2, 2021) ("Second IRO").

On May 4, 2021, Mr. Abernathy filed a second Amended Complaint that identified three of the four John Doe Defendants as Captain James Watson, C/O Marrinellie,[6] and C/O Vamos. Second Am. Compl.

On June 4, 2021, the Court issued an order permitting Mr. Abernathy to proceed on his Eighth Amendment claims against Captain Watson, Correction Officer Marinelli (first shift), and Correction Officer Vamos (second shift), and to identify the remaining Doe defendants by August 6, 2021. Order, ECF No. 21 (June 4, 2021).[7]

On February 28, 2022, Defendants filed a Motion for Summary Judgment, a Memorandum of Law, a Statement of Facts in Compliance with Local Rule 56(a)1, and supporting exhibits. Mot. for Summ. J.; Mem. in Sup. of Mot. for Summ. J., ECF No. 30-1 (Feb. 28, 2022) (Defs.' Mem.); Defs.' Rule 56(a) Statement; Watson Decl.; Marinelli Decl.; Vamos Decl.; Cooper Decl., ECF No. 30-7 (Feb. 28, 2022) ("Cooper Decl."); Directive 9.6, ECF No. 30-8 (Feb. 28, 2022) ("Directive 9.6"). On May 13, 2022, Mr. Abernathy filed an opposition memorandum, which contained a statement of facts and supporting exhibits. Pl.'s Opp'n.[8]

On May 26, 2022, Defendants filed a reply brief. Defs.' Reply, ECF No. 39 (May 26, 2022) ("Defs.' Reply"). On June 24, 2022, Mr. Abernathy filed a sur-reply on June 24, 2022. Pl.'s Sur-Reply, ECF No. 43 (June 24, 2022) ("Pl.'s Sur-Reply").

---

[6] This defendant's last name is spelled Marinelli. *See* Marinelli Decl. Accordingly, this ruling refers hereinafter to this defendant as Marinelli. The clerk is instructed to correct the spelling of this defendant's name on the docket.

[7] Because Mr. Abernathy did not identify the fourth John Doe defendant by August 6, 2021, as instructed by the Court, all claims against the remaining John Doe Defendant are dismissed. *See* Order, ECF No. 21.

[8] The exhibits attached to the opposition include Mr. Abernathy's declaration and declarations from other inmates. *See* Pl.'s Opp'n at 23–32 (enclosing Plaintiff's declaration, Robert Greatheart's declaration, Martin Gray's declaration, and Ian Cook's declaration).

## II.    STANDARD OF REVIEW

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107, 113–14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113–14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Which facts are material is determined by the substantive law. *Anderson*, 477 U.S. at 248. "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense." *Giordano v. Mkt. Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He cannot "rely on conclusory allegations or unsubstantiated speculation" but "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015) (internal quotation marks and citation omitted). To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000) (citing *Anderson*, 477 U.S. at 256).

Although the court is required to read a self-represented party's "papers liberally to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015)

(internal quotation marks and citation omitted), "unsupported allegations do not create a material

issue of fact" and do not overcome a properly supported motion for summary

judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

## III.    DISCUSSION

Defendants argue that Mr. Abernathy failed to exhaust his available administrative

remedies in compliance with the Prison Litigation Reform Act ("PLRA") and cannot establish

the objective and subjective elements of Eighth Amendment claims. Defs.' Mem. at 5–16. In the

alternative, Defendants argue that they are entitled to qualified immunity from liability. *Id.* at

16–19.[9]

Mr. Abernathy opposes Defendants' arguments. Pl.'s Opp'n at 4–14. In addition, he

argues that the motion for summary judgment should be denied because of Defendants'

"exten[sive] non-compliance" with "Local and Federal Rules of Practice" or that consideration

of the motion should be deferred until Defendants comply with discovery. *Id.* at 2–4. He

maintains that Defendants have withheld certain material evidence from him. *Id.* at 4.

The Court considers first whether Defendants have shown that Mr. Abernathy failed to

exhaust his administrative remedies to satisfy the PLRA.

### A.    Exhaustion of Administrative Remedies

The PRLA, which governs actions brought by prison inmates, requires a prisoner to

exhaust administrative remedies prior to filing a federal lawsuit regarding prison conditions. 42

U.S.C. § 1997e(a).[10]

---

[9] Defendants have asserted qualified immunity as their second affirmative defense and failure to exhaust as their fourth affirmative defense. *See* Answer, ECF No. 25 (Sept. 3, 2021).

[10] Section 1997e(a) provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Failure to exhaust is an affirmative defense under the PLRA, *see Jones v. Bock*, 549 U.S. 199, 216 (2007), and a defendant bears the burden to prove that an inmate did not exhaust his or her remedies prior to filing the action in court. *See Johnson v. Mata*, 460 F. App'x 11, 15 (2d Cir. 2012) ("The defendants have the burden of showing that there is no genuine issue of material fact as to exhaustion that would preclude summary judgment.").

Section 1997e(a) applies to all claims regarding prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002), and it requires exhaustion of any available administrative remedies, regardless of whether they provide the relief the inmate seeks. *See Booth v. Churner*, 532 U.S. 731, 740–41 (2001). A claim is not exhausted until the inmate complies with all administrative deadlines and procedures. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Informal efforts to put prison officials on notice of inmate concerns do not satisfy the exhaustion requirement. *See Marcias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007). If the deadline to file a grievance has passed, an unexhausted claim is barred from federal court. *See Woodford*, 548 U.S. at 95. Thus, "untimely or otherwise procedurally defective attempts to secure administrative remedies do not satisfy the PLRA's exhaustion requirement." *Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) (quoting *Woodford*, 548 U.S. at 83–84)).

The exhaustion requirement, however, may be excused when the remedy is not available in practice even if it is "officially on the books." *See Ross v. Blake*, 578 U.S. 632, 642–643 (2016). Thus, "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 642 (quoting *Booth*, 532 U.S. at 738). The United States Supreme Court has established three circumstances under which an inmate need not exhaust the administrative procedure as it is deemed

8

unavailable: (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) when a procedure is "so opaque that it becomes, practically speaking, incapable of use;" or (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643–644. "Whether an administrative remedy was available to a prisoner in a particular prison or prison system is ultimately a question of law, even when it contains factual elements." *Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015).

It is not sufficient for a plaintiff to exhaust his administrative remedies after filing his complaint; a plaintiff must exhaust his administrative remedies prior to filing the action in federal court. *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001), *overruled on other grounds*, *Porter*, 534 U.S. 516; *Gulley v. Bujnicki*, No. 3:19-cv-903 (SRU), 2019 WL 2603536, at *3 (D. Conn. June 25, 2019). The Supreme Court has explained:

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).

*Woodford*, 548 U.S. at 90 (emphasis omitted) (internal quotation marks and citation omitted).

Thus, Mr. Abernathy had to exhaust his administrative remedies for his Eighth Amendment claims against custody staff arising from the incident on August 22, 2019, under Administrative Directive 9.6(6) before filing this lawsuit. *See Riles v. Buchanan*, 656 F. App'x 577, 581 (2d Cir. 2016) (affirming district court's dismissal based on inmate's failure to exhaust his claim of correction officer's use of excessive force under Administrative

Directive 9.6). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Bock*, 549 U.S. at 218.

Although a defendant bears the burden on this affirmative defense at all times, the plaintiff may still have to adduce evidence in order to defeat a motion for summary judgment. *See Hudson v. Kirkey*, No. 9:20-cv-581 (LEK/DJS), 2021 WL 1966721, at *3 (N.D.N.Y. May 17, 2021) (explaining that once defendant introduces evidence of a functional grievance system, plaintiff could not survive summary judgment without submitting competent evidence to indicate unavailability).

### 1.    <u>Administrative Remedies Under Administrative Directive 9.6</u>[11]

Administrative Directive 9.6(1) "provide[s] a means for an inmate to seek formal review of an issue relating to any aspect of an inmate's confinement that is subject to the Commissioner's authority[.]" Directive 9.6 at 1.

Administrative Directive 9.6(6) provides the grievance procedure for "any issue relating to policy and procedure, and compliance with established provisions." Directive 9.6(6) requires an aggrieved inmate to first seek informal resolution prior to filing a grievance. *Id.* at 5. It provides that "the inmate shall submit a written request via CN 9601, Inmate Request Form" in the event that "the verbal option does not resolve the issue." *Id.* Administrative Directive 9.6(6)(C) specifically states that the inmate must include a copy of the Inmate Request Form with the grievance, or an inmate must explain its absence. *Id.* at 6.

---

[11] Defendants have submitted as an exhibit the version of Administrative Directive 9.6 in effect at the times relevant to this action. *See* Directive 9.6. DOC has since issued an updated Directive 9.6 effective April 30, 2021, which is publicly available on DOC's website at https://portal.ct.gov/DOC/AD/AD-Chapter-9. *See Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (court may "take judicial notice of relevant matters of public record.").

The Level-1 Grievance must be filed within thirty calendar days from the date of the occurrence or discovery of the cause of the Grievance and should include a copy of the response to the written request to resolve the matter informally or explain why the response is not attached. *Id.* The Unit Administrator shall respond in writing to the Level-1 Grievance within thirty business days of his or her receipt of the Grievance. *See id.* at 7.

A Level 1 grievance may be rejected, denied, compromised, upheld, or withdrawn. *Id.* at 6. When a Level 1 grievance is returned without disposition, that means the "grievance has not been properly filed and may be re-filed after the inmate has corrected the error." *Id.* A Level 1 grievance may be returned to an inmate without disposition if: (1) the inmate has not first utilized the informal resolution process; and (2) the inmate fails to attach the Inmate Request Form and staff response or to adequately explain why the form is not attached; the inmate fails to adhere to the various requirements under Section (5)(E)(1–5) of A.D. 9.6. *Id.* When a Level 1 grievance is returned without disposition, an inmate will receive a form CN 9606 ("Returned Without Disposition Form"). *See id.* A grievance returned without disposition due to a failure to comply with procedural requirements of Administrative Directive 9.6 may not be appealed. *See id.* A.D. 9.6(6)(E), however, provides: "Returned without disposition signifies that the grievance has not been properly filed and may be re-filed after the inmate has corrected the error." *Id.* The CN 9606 form also instructs the inmate that the inmate "may resubmit [their] grievance when it is in compliance with Administrative Directive 9.6, Inmate Administrative Remedies." *See* Pl.'s Opp'n at 41.

The inmate may otherwise appeal the disposition of the Level-1 Grievance by the Unit Administrator or the Unit Administrator's failure to dispose of the grievance in a timely manner to Level 2. Directive 9.6 at 6–7.

11

A Level-2 Appeal of a disposition of a Level-1 Grievance must be filed within five calendar days from the inmate's receipt of the decision on the Level-1 Grievance. *See id.* at 7. The Level-2 Appeal of the Unit Administrator's failure to dispose of the Level-1 Grievance in a timely manner must be filed within 65 days from the date the Level-1 Grievance was filed by the inmate. *See id.* at 8.

Level-2 Appeals filed by inmates confined in Connecticut correctional facilities are reviewed by the appropriate District Administrator. *Id.* at 7. The District Administrator is required to respond to the Level-2 Appeal within thirty business days of receipt of the appeal. *See id.*

Level-3 appeals are restricted to challenges to department policy, the integrity of the grievance procedure or Level-2 Appeals to which there has been an untimely response by the District Administrator. *Id.* A Level 1-3 appeal must be filed within five calendar days from the inmate's receipt of the decision on the Level-2 Appeal. *See id.* A Level-3 Appeal of the District Administrator's failure to dispose of the Level-2 Appeal in a timely manner must be filed within 35 days of the filing of the Level-2 appeal. *Id.* at 8. A Level-3 Appeal is reviewed by the Commissioner of Correction or his or her designee. *Id.* at 7.

### 2.    Mr. Abernathy's Grievance Filing Under Directive 9.6

Under A.D. 9.6(6)(C), Mr. Abernathy had until September 22, 2019, to file his Level-1 Grievance with a copy of the response to his informal resolution request or an explanation why the response was not attached. *Id.* at 6.

Defendants maintain that Mr. Abernathy's Eighth Amendment claims are barred by the PLRA because he filed only (1) a Level-1 Grievance that was dated October 22, 2019, received October 23, 2019, and rejected as untimely, and (2) a Level-2 Grievance that was dated

November 9, 2019, received November 18, 2019, and rejected as untimely on November 26, 2019. Defs.' Mem. at 8–9; *see* Cooper Decl.; Grievances, ECF No. 30-10 (Feb. 28, 2022) ("Grievances"); Grievance Log, ECF No. 30-11 (Feb. 28, 2022) ("Grievance Log"). Mr. Abernathy responds that his administrative remedies under A.D. 9.6 were unavailable. Pl.'s Opp'n at 5–8.

In support of his assertion of unavailability, Mr. Abernathy has submitted exhibits reflecting an extensive grievance-filing history, as detailed below.

In a Level-1 Grievance (dated September 17, 2019), Mr. Abernathy explained—on a page attached to his grievance form—that he had not received an answer to his two informal resolution inmate requests and that he was seeking compensation for his injuries resulting from a fall on a wet floor on August 22, 2019. *Id.* at 38–40.[12] ARC Green's response, dated September 18, 2019, returned this Level-1 Grievance without disposition with the box checked for the stated reason: "A grievance must be filed on CN 9602, Inmate Administrative Remedy Form." *Id.* at 41.

Mr. Abernathy's Level-2 Grievance, dated September 19, 2019, asserted that he had "properly filed" his grievance on a CN 9602 form. *Id.* at 37. ARC Green's response, dated September 20, 2019, stated:

> You cannot submit a level 2 grievance until a level 1 grievance is answered. What you received back was a return without disposition which means you have to fix the issues you had with the level 1 and resubmit it. This level 2 grievance will not be given consideration until you have an answer to a level 1 grievance.

*Id.* at 36.

---

[12] Mr. Abernathy also states that his inmate requests to Captain Watson—in attempt to informally resolve his issues—went unanswered. *Id.* at 24 ¶¶ 19–20.

In a second Level-1 Grievance, dated September 20, 2019, Mr. Abernathy explained within the space provided on the CN 9602 form that he was requesting compensation for having been injured due to falling on a wet floor and had previously filed two informal complaints that had not been answered. *Id.* at 45. In a response dated September 23, 2019, ARC Green indicated that his grievance was being returned without disposition with the boxes checked indicating his failure to attempt informal resolution and failure to state his grievance and action "simply and coherently." *Id.* at 44. ARC Green also explained:

> You did not attempt an informal resolution to anyone prior to filing the grievance. Preserving video is not an informal resolution to resolve your issue and you are writing the wrong staff members for that. Also, "please rectify" is not a remedy.

*Id.*

In his next Level-2 Grievance appeal, dated September 24, 2019, Mr. Abernathy wrote: "I attempt to resol[ve] this problem and keep going in circle." *Id.* at 46. In a memo dated September 27, 2019, ARC Green wrote:

> You continue to submit level 1 grievances improperly and level 2 grievances with a level one decision. You cannot submit a level 2 grievance until a level 1 grievance is answered. What you received back was a return without disposition (recent one is RWOD #7198) which means you have to fix the issues you had with the level 1 and resubmit it. This level 2 grievance will not be given consideration until you have an answer to a level 1 grievance.

*Id.* at 43.

In a Level-3 Grievance appeal dated September 29, 2019, Mr. Abernathy stated: "I am attempt[ing] to resol[ve] this problem and keep going [in] circle stop[p]ing me from exhausting the Department [A]dministrative Remedies." *Id.* at 49. A response from ARC Green (dated October 2, 2019), explained:

> As stated in previous memos, you cannot submit a level 2 grievance without a level 1 decision. You have now submitted a level 3 grievance without a level 2 or level 1 decision. You are continuously submitting level 2 and level 3 grievances although you

have been told you must rewrite and submit a level 1 grievance properly and receive a decision prior to submitting appeal grievances. You cannot submit a level 3 grievance until a level 1 grievance and level 2 is answered. This level 3 grievance will not be given consideration.

*Id.* at 48.

Mr. Abernathy then submitted another Level-1 Grievance dated October 4, 2019, stating that he intended to file litigation for damages due to having sustained injuries "caused by an unreasonable unsafe environment" and requesting that his Level-1 grievance be "dispose[d] . . . so that [he] may exhaust the remaining levels" of his remedies. *Id.* at 51. This grievance was returned without disposition on October 7, 2019 for failure to use an updated CN 9602 form. *Id.* at 52. Mr. Abernathy refiled essentially the same grievance on a different form, but this grievance was also returned without disposition on October 9, 2019 for failure to state his grievance and requested action "simply and coherently." *Id.* at 54–55. In the comments section, ARC Streat wrote: "You are not stating what you are grieving." *Id.* at 55.

In his next Level-1 Grievance dated October 9, 2019, Mr. Abernathy explained once again that he had fallen due to wet floor that had been waxed, that he had sustained injuries and ongoing pain, that he intended to initiate litigation for his injuries, and that he needed to exhaust his administrative remedies. *Id.* at 58. This grievance was also returned without disposition on October 11, 2019, for failing to state his grievance "simply and coherently;" ARC Streat also wrote: "No grievable [sic] action was requested." *Id.* at 57.

Thereafter, Mr. Abernathy went on to submit his Level-1 and Level-2 Grievances that were rejected as untimely. *Id.* at 60–61; Grievances at 2-6. His Level-1 Grievance dated October 22, 2019, stated that he had fallen due to the wet floor on August 22, 2019, that he was grieving the injuries sustained caused by the wet floor, that he made attempts at informal resolution and exhaustion of his administrative remedies. *Id.* at 61. On an attached page, he requested an MRI

and a disposition on his grievance. Grievances at 5. This grievance was rejected as untimely because it had been filed "past the allotted 30 calendar days[.]" *Id.* at 61. His Level-2 Appeal explained his injury, referenced his Level-1 Grievance, and requested an MRI and CT scan, exhaustion of remedies, and damages. *Id.* at 60. The response rejecting this appeal stated that his "grievance was submitted far beyond the allotted timeframe allowed by A.D. 9.6" and "was filed improperly and therefore rejected." *Id.*

This Court has previously determined that an inmate-plaintiff who is aware of the grievance procedure but fails to file a proper, timely Level-1 Grievance does not satisfy the PLRA exhaustion requirement. *See Davis v. Williams*, No. 3:16-CV-01981 (JAM), 2019 WL 1012008, at *3 (D. Conn. Mar. 4, 2019) (finding that the plaintiff did not file a proper, timely level 1 grievance where "[t]he first grievance that he filed on August 18, 2016, was indeed timely but manifestly deficient for failure to exhaust the informal resolution process. . . . [and t]he second grievance that he filed on September 27, 2016, was well more than 30 days after August 18, 2016.").

But, more recently, this Court denied a motion for summary judgment arguing that the inmate-plaintiff failed to exhaust his administrative remedies by filing a grievance beyond the thirty-day window after his timely grievance had been returned without disposition. *See Sease v. Frenis*, No. 3:17-CV-770 (SRU), 2021 WL 260398, at *7 (D. Conn. Jan. 25, 2021). The *Sease* court observed that requiring an inmate to re-file a corrected grievance within the 30-day period after a return without disposition would contradict the administrative provision of Directive 9.6(6)(E) the requires an inmate to "refile[] after the inmate has corrected the error[,]" and such approach would render Directive 9.6 "so opaque that it is unavailable." *Id.* at *8. The Court noted that otherwise an inmate could have "virtually (or literally) no opportunity to re-file a

corrected Level 1 grievance" within the thirty-day window after a grievance is returned without disposition. *Id.*

Both Directive 9.6(6)(E) and the CN 9606 form permit an inmate to re-file a returned grievance after the inmate corrects the defect, but neither provides a time limit for the inmate to correct the error and resubmit the grievance.[13] Notably, the ARC memos and responses on the CN 9606 failed to indicate any time limitation for Mr. Abernathy to re-file a corrected Level-1 Grievance, and the administrative scheme under 9.6 failed to provide him with guidance about when he was required to refile his corrected Level-1 grievance after return without disposition.

Where an administrative scheme makes it impossible for an inmate "to ascertain whether and how" to pursue his grievance, the administrative remedy may be considered to be unavailable as "so opaque" and "confusing that … no reasonable prisoner can use [it]." *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 124 (2d Cir. 2016) (citing *Ross*, 578 U.S. at 643–644); *see also Sease*, 2021 WL 260398, at *9 ("If the absence of guidance in a grievance procedure can lead to an administrative scheme's being "prohibitively opaque, … then surely contradictory instructions in a grievance procedure can also lead to an administrative scheme's being prohibitively opaque." (citing *Priatno*, 829 F.3d at 124–27)). This record suggests that Mr. Abernathy was not provided with sufficient information from the administrative scheme to exhaust his administrative remedies.

Moreover, the record evidence suggests that the prison staff may have acted to thwart his ability to avail himself of the administrative process. ARC Green appears to have returned without disposition his first timely Level-1 Grievance because the grievance explanation was set

---

[13] Of note, the revised Directive 9.6 (effective April 30, 2021) provides a time limit of five calendar days to correct and resubmit a grievance rejected for a procedural defect. A.D. 9.6(6)(b)(2) available at https://portal.ct.gov/DOC/AD/AD-Chapter-9.

forth on a page attached to his grievance form, CN 9602. Pl.'s Opp'n at 41. But A.D. 9.6(5)(E) instructs that "a request for an administrative remedy must be filed, in writing, on CN 9602, Inmate Administrative Remedy Form[,]" and "the length of the request for an administrative remedy shall be restricted to the space available on the face of the CN 9602, Inmate Administrative Remedy Form and one (1) additional 8 ½ x 11 inch page." Directive 9.6 at 7. A.D. 9.6 does not prohibit an inmate from writing his grievance statement on an attached 8 ½ x 11-inch page. *Id.*

After Mr. Abernathy re-filed his corrected Level-1 Grievance by writing the same complaint in the form's provided space, ARC Green returned the grievance without disposition for the stated reason that he had not attempted an informal resolution or adequately stated his request. Pl.'s Opp'n at 44–45. But Mr. Abernathy had explained that his prior informal complaints had not been answered; further, he had stated "[p]lease rectify" after describing the conditions causing his fall and injury—a wet floor that was increasingly unsafe due to being waxed—and requested "fair and equitable compensation" for "loss, pain, suffering and indifference." *Id.* at 45. Unlike the circumstances in *Davis*, Mr. Abernathy's Level-1 Grievance was not "manifestly deficient for failure to exhaust the informal resolution process" and he had requested a remedy of compensation. *See Davis*, 2019 WL 1012008, at *3.

Later, after Mr. Abernathy corrected a Level-1 Grievance returned for failure to use an updated CN 9601 form, ARC Streat returned the grievance without disposition due his failure to state what he was grieving. Pl.'s Opp'n at 55. His subsequent Level-1 Grievance explaining his fall and injury and need to exhaust his administrative remedies so that he could pursue litigation based on "an unreasonable unsafe environment" was again returned without disposition for failure to state a "grievable action." *Id.* at 57–58. Finally, Mr. Abernathy received a disposition

of "rejected" for untimeliness on his Level-1 Grievance that stated "he was grieving physical and mental injury, caused by wet floor." *Id.* at 61. In sum, this record suggests that Mr. Abernathy was unable to obtain an answer for his Level-1 Grievances.

Construed most favorably to Mr. Abernathy, this record raises a question of fact about whether prison staff thwarted his ability to avail himself of his administrative remedies by returning his grievances without a sufficient cause or failing to explain fully how he should correct his grievance so that his re-filed grievance was also returned without disposition. *See Baltas v. Erfe,* 3:19-cv-1820 (MPS), 2020 WL 1915017, at *33 (D. Conn. Apr. 20, 2020) (noting that correctional staff conduct could be considered to constitute "thwart[ing] inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation" where a grievance is returned to an inmate with an instruction to re-file it and then the re-filed grievance is rejected as untimely (internal quotation marks and citations omitted) (quoting *Baltas v. Rivera*, No. 3:19-cv-1043 (MPS), 2019 WL 3944435, at *10–11 (D. Conn. Aug. 21, 2019) and quoting *Ross*, 578 U.S. at 643–644)).

Thus, construing the relevant evidence most favorably to the non-moving party, genuine issues of fact exist regarding whether Mr. Abernathy's administrative remedies should be considered exhausted because his remedies were incapable of use. *See Ross*, 578 U.S. at 643–644.

Accordingly, the motion for summary judgment on grounds of non-exhaustion will be denied.

## B.    Eighth Amendment Conditions of Confinement[14]

---

[14] In opposition to the motion for summary judgment, Mr. Abernathy states that "[v]entillation is a fundamental attribute of shelter" and that "[i]nadequate ventilation can underlie an Eighth Amendment claim both by itself and in contribution to other hazardous conditions, e.g. a wet and slippery floor." Pl.'s Opp'n at 10. He also asserts that he "wasn't immediately escorted to the medical area or, alternatively,

In *Farmer v. Brennan*, the United States Supreme Court explained that the Eighth Amendment's prohibition of cruel and unusual punishment "places restraints" and imposes duties on prison officials to provide humane conditions of confinement. 511 U.S. 825, 832 (1994). Thus, the Eighth Amendment protects against punishments that "involve the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). Although the Constitution does not require "comfortable" prison conditions, the Eighth Amendment requires prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care," and to "take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832–33 (internal quotation marks and citation omitted).

To state a deliberate indifference to health or safety claim under the Eighth Amendment, an inmate must demonstrate both an objective and a subjective element. To meet the objective element, an inmate must allege that he was incarcerated under conditions that resulted in a "sufficiently serious" deprivation, such as the denial of a "life[ ] necessit[y]" or a "substantial risk of serious harm." *Id.* at 834 (internal quotation marks and citations omitted). With respect to the objective element, the Court should "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to

---

that medical staff weren't summoned to [his] location when he sustained his injury. *Id.* He claims that Defendant Marinelli witnessed his call but failed to "assist [him] in any way." Pl.'s Opp'n at 24 ¶¶ 16–17. It is not clear whether Mr. Abernathy's statements are intended as further support for his existing claim of deliberate indifference to the risk posed by the slippery wet floor or to assert additional Eighth Amendment claims. To the extent that he seeks to assert new Eighth Amendment claims based on inadequate ventilation and medical indifference that were not raised in his operative complaint, Mr. Abernathy cannot amend his Amended Complaint to assert new claims in his opposition memorandum to the motion for summary judgment. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (plaintiff cannot amend complaint through memorandum filed in opposition to dispositive motion); *Purugganan v. AFC Franchising, LLC*, No. 20-cv-00360(KAD), 2021 WL 5301522, at *4 (D. Conn. Nov. 15, 2021) (plaintiff cannot amend complaint through memorandum). Thus, the Court considers only Mr. Abernathy's Eighth Amendment claim based on deliberate indifference to the risk of harm posed to Mr. Abernathy by the wet slippery floor. *See* Second IRO; Am. Compl.

expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993) (emphasis in original).

To meet the subjective element, an inmate must allege that the defendant prison officials possessed culpable intent, that is, the officials knew that he faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. *See Farmer*, 511 U.S. at 834, 837. Thus, an allegation of "mere negligen[t]" conduct is insufficient. *Id.* at 835. Rather, the subjective element requires that a plaintiff allege that prison officials acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin v. Goord,* 467 F.3d 263, 280 (2d Cir. 2006).

Defendants argue that Mr. Abernathy cannot establish either an objectively serious risk of harm or conscious disregard by any defendant. Defs.' Mem. at 12–14. Generally, "slip-and-fall claims are seldom viewed as having constitutional dimension[.]" *McCray v. Lee*, 963 F.3d 110, 115, 120 (2d Cir. 2020). The Second Circuit has recognized, however, that exceptional circumstances could "elevate" the risk of such condition "beyond the typical level of danger presented by a slippery sidewalk or a wet floor." *Id.* at 120. Thus, Mr. Abernathy "'must show that the risk of which he complains is not one that today's society chooses to tolerate.'" *Id.* (quoting *Helling*, 509 U.S. at 36).

On initial review, the Court noted that Mr. Abernathy had alleged that the floor became extremely slippery when waxed due to its "stripped" condition, and that he had informed correctional staff about the floor's risk of harm on several occasions from August 21 to August 22, 2019. Second IRO at 12–13.

The present record shows no dispute that water was on the floor at the time relevant to this action, although Defendants characterize the condition as "condensation in certain spots on

the floor from the HVAC unit not working properly." *See* Defs.' Rule 56(a) ¶ 37. In support of his opposition to the motion for summary judgment, Mr. Abernathy has submitted his declaration and that of other inmates that raise at least a question of fact about the floor condition in South Block 2 on August 21 and 22, 2019. *See* Pl.'s Opp'n at 23–32.

Mr. Abernathy states that "[b]y August 21, 2019[,] the humidity and condensation quickly accumulated resulting in standing puddles of water in the common areas of the South-2 housing unit" and "visible pooling." Pl.'s Opp'n. at 23 ¶¶ 5, 8. Inmate Robert Greatheart states that he observed the floors in South Block 2 "being very damp from humidity collecting after the venti[l]ation system stopped working" and that "no effort was made to prevent inmates in South-2 from slipping on the floors." Greatheart Decl. at 27 ¶¶ 2–5. Inmate Martin Gray states that he observed wet floors in South Block 2 resulting from humidity and a malfunctioning ventilation system on August 21 and 22, 2019, but did not see any remedial action taken until after Mr. Abernathy's fall. Gray Decl. at 29 ¶¶ 2–6.

In addition, Mr. Abernathy's Amended Complaint describes a "stripped" "rubber floor" that "becomes even more slippery when wax is applied[.]" Am. Compl. ¶ 29.[15] Inmate Ian Cooke states that he worked as a DOC housekeeper for three years and used a "floor wax/sealer product" on common floors in the prison that made the floor "unbelievably slippery when wet … comparable to an ice rink." Pl.'s Opp'n at 31–32 ¶¶ 10–13. Thus, at this juncture, and on the present record, a reasonable trier of fact could determine that Mr. Abernathy had been exposed to an extremely slippery floor, that presented an objectively serious risk of harm.

---

[15] The Court notes that Mr. Abernathy's allegations reflect his personal knowledge of the conditions in South Block 2. *See Curtis v. Cenlar FSB*, 654 F. App'x 17, 20 (2d Cir. 2016) (Summary Order) (noting that a verified complaint may be treated "as an affidavit for summary judgment purposes," but "the allegations contained therein can suffice to defeat summary judgment only insofar as they were made on personal knowledge.").

Likewise, there are genuine issues of material fact as to the subjective element.

Defendants claim no recollection of having discussed the wet floor with Mr. Abernathy. Defs.'

Rule 56(a) ¶ 35. Mr. Abernathy states, however, that he discussed the safety risks resulting from

the broken ventilation system with Captain Watson on August 21, 2019, when there was visible

water pooling in the South Block 2, Pl.'s Opp'n at 23 ¶¶ 6–8; that he "called out" on that same

day to Defendant Marinelli about the unsafe conditions but received the response, "[Y]ou're

locked up, don't worry about it." *Id.* ¶ 9; and that he spoke directly to both Officers Marinelli and

Vamos during their tours about the "visible water on the floor creating a hazard." *Id.* ¶ 12.

On a motion for summary judgment, the Court cannot render credibility

assessments. *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 2017) ("Credibility assessments,

choices between conflicting versions of the events, and the weighing of evidence are matters for

the jury, not for the court on a motion for summary judgment."). Further, "[a]wareness may be

proven from the very fact that the risk was obvious[,]" *Spavone v. N.Y. State Dep't of Corr.

Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quotation marks omitted), and Mr. Abernathy may be

able to prove that Defendants saw the visible pooling on the floor while they toured Mr.

Abernathy's housing unit and were aware of exceptionally dangerous  prison floor conditions.

Accordingly, Mr. Abernathy's Eighth Amendment claims present questions of fact that

preclude summary judgment as a matter of law, Defendants' motion for summary judgment on

that basis must be denied.[16]

---

[16] Defendants also argue that Mr. Abernathy has named Captain Watson to this action because of his
high-ranking supervisory position and cannot establish that he had any direct involvement in the Eighth
Amendment violation. Defs.' Mem. at 14–16. In *Tangreti v. Bachmann*, the Second Circuit held that
"after *Iqbal*, there is no special test for supervisory liability," and instead, an alleged "violation must be
established against the supervisory official directly." 983 F.3d 609, 618 (2d Cir. 2020). Thus, "for
deliberate-indifference claims under the Eighth Amendment against a prison supervisor, the plaintiff must
plead and prove that the supervisor had subjective knowledge of a substantial risk of serious harm to an
inmate and disregarded it." *Id.* at 616 (citing *Farmer*, 511 U.S. at 837). As previously discussed, Mr.

C.        The Qualified Immunity Defense

"Qualified immunity protects federal and state officials from money damages and 'unnecessary and burdensome discovery or trial proceedings.'" *Coollick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998)). It "is an affirmative defense that the defendants have the burden of raising in their answer and establishing at trial or on a motion for summary judgment." *Id.*

When a court analyzes the question of whether public officials are entitled to qualified immunity, there are two issues that guide the inquiry. *See Zalaski v. City of Hartford*, 723 F.3d 382, 388–89 (2d Cir. 2013). First, the court considers whether "the facts show that the officer's conduct violated plaintiff's constitutional rights." *Id.* at 388. Second, if the answer is no, "further inquiry is unnecessary because . . . there is no viable constitutional claim," but if the answer is yes, "or at least not definitively no," the court may move on to the second question "was the right clearly established at the time of defendant's actions?" *Id.* The Second Circuit has clarified that "[s]o long as a defendant has an objectively reasonable belief that his actions are lawful, he is entitled to qualified immunity." *Spavone*, 719 F.3d at 135 (internal quotation marks and citation omitted). "If a reasonable officer might not have known for certain that the conduct was unlawful—then the officer is immune from liability." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017).

---

Abernathy states that he spoke to Captain Watson regarding his safety concerns about the hazards caused the lack of ventilation, but "when pressed" Captain Watson "indicated there was no safety risk requiring modified unit movement . . . in spite of the visible pooling of water in the majority of the public spaces within the unit." Pl.'s Decl. at 23 (¶¶ 6–8). This evidence raises a question of fact whether Captain Watson was aware of, but disregarded, a substantial risk of serious harm posed to Mr. Abernathy by the conditions of the wet floor. Thus, Mr. Abernathy has submitted evidence that Captain Watson acted with deliberate indifference.

24

Courts need not consider these two questions in order, and may consider the latter question first, which may be "particularly appropriate where the former turns on difficult or novel questions of constitutional or statutory interpretation, but it is nevertheless clear that the challenged conduct was not objectively unreasonable in light of existing law." *Zalaski*, 723 F.3d at 389 (internal quotation marks omitted) (citing *Coollick*, 699 F.3d at 219–20).

Defendants maintain that they are entitled to qualified immunity from damages because they did not violate Mr. Abernathy's constitutional rights, and their actions were objectively reasonable under the specific circumstances. Def.'s Mem. at 19–22.

Consistent with the Court's discussion denying summary judgment on the merits of Mr. Abernathy's claims, the Court cannot conclude based on the present record that Defendants did not violate Mr. Abernathy's clearly established Eighth Amendment rights. Further, because the qualified immunity analysis turns on the same factual questions regarding the extent of the slippery floor conditions and the Defendants' awareness of the risk posed to Mr. Abernathy, the Court cannot assess, as a matter of law, whether it was objectively reasonable for Defendants to believe their conduct was not in violation of the Eighth Amendment at the time.

Accordingly, the motion for summary judgment must be denied on the basis of qualified immunity.

### D.      Request for Additional Discovery

Mr. Abernathy asserts that he did not have the opportunity to complete his discovery before the filing of the Defendants' motion for summary judgment. Pl.'s Opp'n at 2–4. He asserts that he has sought access to, but has not been provided with, logbook entries, surveillance video, and requests for admission. *Id.* at 3–4. He argues that these materials are relevant to his proof of Defendants' reckless disregard of the "hazardous condition." *Id.*

Mr. Abernathy has not explained why he was not able to obtain such material during the discovery period, and Defendants' brief fails to address Mr. Abernathy's claim for additional discovery.

Accordingly, the Court cannot evaluate the substance of Mr. Abernathy's claim that he is entitled to discovery of these materials and will address them as a matter to be addressed before any trial. *See Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016) ("[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases.").

## CONCLUSION

For the foregoing reasons,

Defendants' motion for summary judgment, ECF No. 30, is **DENIED**.

In a separate order, the Court will address any outstanding discovery issues related to trial.

The Clerk of Court is instructed to correct the spelling of Defendant Marinelli's name.

**SO ORDERED** at Bridgeport, Connecticut, this 5th day of August, 2022.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE